1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10 | WESTERN & CLAY, LLC,
SWINERTON BUILDERS
11 | NORTHWEST, INC., and CITIGROUP
GLOBAL INVESTMENTS REAL
12 | ESTATE LP, LLC,

CASE NO. C09-1423 MJP

ORDER ON CROSS MOTIONS FOR
SUMMARY JUDGMENT

13 | Plaintiffs,

14 | v.

15 | LANDMARK AMERICAN
INSURANCE COMPANY, and AXIS
16 | SURPLUS INSURANCE COMPANY,

17 | Defendants.

18

19       This matter comes before the Court on the parties' cross-motions for summary judgment.

20 | (Dkt. Nos. 46, 52.)  Having reviewed the motions, the responses and replies (Dkt. Nos. 55, 57),

21 | and all papers submitted in support of the motions, the Court GRANTS in part and DENIES in

22 | part Defendants' motion and DENIES Plaintiffs' motion.

23

24

**Background**

Landmark American Insurance Company ("Landmark") and Axis Surplus Insurance Company ("Axis") issued first-party insurance policies to Western & Clay that provided coverage for "one loss or series of losses arising out of one occurrence." (Dkt. No. 53-1 at 38, 117.) The policies insure against "perils": "All Risks of Direct Physical Loss or Damages howsoever caused, except as may be otherwise provided herein." (Id. at 40, 118.) The parties agree that "weather" is a covered peril, but there is no definition of that term in the policies.

On May 21, 2008, Western & Clay submitted a proof of loss for a claim that the winter of 2006-2007 caused substantial delay and costs in a large construction project in Seattle, Washington. (Dkt. No. 47 at 23-48.) It argued that Seattle endured one its worst winter seasons from October 16, 2006 to March 31, 2007 and that the cause of the weather damage was "a combination of events involving wind and rain storms." (Id. at 23, 39.) Plaintiffs argued that "[t]he weather affected the critical path of the project, which was going through the high rise (Building B) precast installation, the windows installation to achieve a dry-in building to start the drywall in the building." (Id. at 39.) As a result, the project suffered substantial delays. (Id.)

In their cross-motions, the parties dispute whether the weather in the 2006-2007 winter constitutes one "occurrence" or multiple "occurrences" of weather under the policy. Plaintiffs ask the Court to "rule, as a matter of law, that the weather claim submitted by Western & Clay constitutes a single occurrence under the terms of the policies." (Dkt. No. 46 at 2.) They seek a broad definition because the claimed loss would be subject to only one deductible and one 30-day waiting period. Defendants ask the Court to "rule as a matter of law that Plaintiffs' alleged losses incurred during the winter of 2006-2007 constitute multiple occurrences under the policies. . . ." (Dkt. No. 52 at 1.) Defendants maintain that the term "occurrence" with regard to

1   weather has an implicit temporal, spatial, and causal limitation.  (Dkt. No. 52 at 4.)  Defendants

2   submit two expert reports on the weather patterns in the 2006-2007 winter.  Plaintiffs do not

3   provide any expert reports.

4          In their briefing, Plaintiffs' theory of their weather-related claim changes from one brief

5   to the next.  In the opening brief, Plaintiffs state they "have always maintained that the continual

6   bad weather during the 2006-2007 winter season constituted a single 'occurrence' under the

7   policies."  (Dkt. No. 46 at 4.)  Plaintiffs then state in the response brief that "[t]he 'occurrence'

8   was the undisputed fact that the building's core was unexpectedly unenclosed as of October 2006

9   due to prior project delays that Axis/Landmark admits were fortuitous.   The 'loss or series of

10  losses' was the continual inundation of the building core with water, ice and snow during the 06-

11  07 wet seasons that resulting in millions of dollars in direct and consequential damages."  (Dkt.

12  No. 55 at 24.)  This shift in position highlights the lack of clarity as to the factual and legal issues

13  presented to the Court.

14         The one clear legal question presented by both motions is straightforward: what does the

15  term "occurrence" mean under the two policies (whose language is essentially identical)?  As

16  explained in detail below, the Court is unable to rule as a matter of law or fact just how many

17  occurrences constitute Plaintiffs' weather-related claim.

18                                            **Analysis**

19  A.   <u>Standard</u>

20         Summary judgment is proper if the pleadings, depositions, answers to interrogatories,

21  admissions on file, and affidavits show that there are no genuine issues of material fact for trial

22  and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

23  Material facts are those "that might affect the outcome of the suit under the governing law."

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 3

1    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The underlying facts are viewed in

2    the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith

3    Radio Corp., 475 U.S. 574, 587 (1986).  The party moving for summary judgment has the burden

4    to show initially the absence of a genuine issue concerning any material fact.  Adickes v. S.H.

5    Kress & Co., 398 U.S. 144, 159 (1970).  Once the moving party has met its initial burden, the

6    burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an

7    element essential to that party's case, and on which that party will bear the burden of proof at

8    trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

9    B.      "Occurrence" Defined

10           It is an open question in Washington what the term "occurrence" means in a first-party

11   insurance policy where there is no definition of the term.

12           Washington courts have considered the term "occurrence" in third-party general liability

13   policies where the term is expressly defined.  See Certain Underwriters at Lloyd's, London v.

14   Valiant Ins. Co., 155 Wn. App. 469, 474 (2010).  In Valiant, a case Plaintiffs rely on almost

15   exclusively, the Court concluded that "[t]he key to the present case is the Zurich policy definition

16   of 'occurrence' as an "'accident, including continuous and repeated exposure to substantially the

17   same general harmful conditions.'"  Id.  The court cited two other cases that defined

18   "occurrence" identically in the policies themselves.  See id. at 475-76 (citing Gruol Constr. Co.

19   v. Ins. Co. of N. Am., 11 Wn. App. 632 (1974) and Am. Nat'l Fire Ins. Co. v. B & L Trucking

20   and Constr. Co., 134 Wn.2d 413 (1998)).  Valiant is not useful given that its ruling as to

21   "occurrence" turned largely on the express definition of that term in the insurance policies—a

22   definition which is absent from the policies at issue here.  The Court must therefore employ

23   standard principles of policy interpretation.

24

1    If insurance policy terms are not defined they are to be given their "plain, ordinary, and

2    popular" meaning. Kitsap County v. Allstate Ins. Co., 136 Wn.2d 567, 576 (1998). "An

3    ambiguity in an insurance policy is present if the language used is fairly susceptible to two

4    different reasonable interpretations." Id. Ambiguities are given a meaning and construction

5    most favorable to the insured. Quadrant Corp. v. Am. States Ins. Co., 154 Wn.2d 165, 172

6    (2005). "If the portion of the policy being considered is an inclusionary clause in the insurance

7    policy, the ambiguity should be liberally construed to provide coverage whenever possible."

8    Ross v. State Farm Mut. Auto. Ins. Co., 132 Wn.2d 507, 515-16 (1997) (emphasis omitted).

9    The Court begins by analyzing the "plain, ordinary, and popular" meaning of

10   "occurrence" by consulting the dictionary. Webster's Dictionary defines occurrence as "an act

11   or instance of occurring" or "an event: INCIDENT." Webster's II New Riverside University

12   Dictionary at 813 (1984). To occur is "to take place," "to be found to exist or appear." Id. The

13   American Heritage Dictionary defines occurrence as "the action, fact or instance of occurring"

14   and "something that takes place." American Heritage Dictionary of the English Language at

15   1216 (2000). The term "occur" means: (1) "to take place; come about"; (2) "to be found to exist

16   or appear"; and (3) "to come to mind." Id. at 1216.

17   The Court defines "occurrence" to mean something that takes place or comes about,

18   which is synonymous with an event or incident. Given some ambiguity in the term

19   "occurrence," the court defines it broadly in favor of Plaintiffs. Any temporal limitation can

20   only be determined with regard to the specific occurrence and context of that occurrence. This is

21   particularly reasonable here given that the policy provides temporal limitations to three types of

22   losses (windstorm, earthquakes, and lightning), but does not provide one as "weather" losses.

23   (Dkt. No. 52-1 at 47-48.) Defendants could have added such an express definition, but did not.

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 5

1   Similarly, the policies include a statement that the defined losses with temporal limitations

2   (windstorm, earthquakes, and lightning) are supposed to be "aggregated and regarded as one loss

3   occurrence." (Dkt. No. 53-1 at 48, 126.)  This would permit a claim for losses arising out of an

4   earthquake and a lightning storm as constituting one occurrence.  There is no requirement they

5   be temporally linked.  This further supports the Court's decision that there is no temporal

6   limitation as a matter of law for weather-related "occurrences" under the policies.  This must be

7   determined on a case-by-case basis.

8          The Second Circuit came to this same conclusion in a case on which Defendants rely.

9   Newmont Mines Ltd. v. Hanover Ins. Co., 784 F.2d 127 (2d Cir. 1986).  The court in Newmont

10  held that occurrence means "something that takes place," which is synonymous with "event" and

11  "incident."  Id. at 135. The court also determined there had to be some element of surprise or that

12  the event was unexpected.  Notably, the definition does not include a temporal limitation.  The

13  trial court allowed the jury to consider whether two roof collapses on the same building covered

14  in snow were part of "a single continuous event or incident" or whether they were "separate

15  events or incidents."  Id. at 134.  The jury found there to be two separate occurrences.  The

16  Second Circuit upheld the jury's finding, noting that the collapses occurred between three and

17  seventeen days apart, the portions of the building were structurally independent, and the first

18  collapse did not contribute to the second.  Id. at 137.  The Court employs the same approach

19  here: the fact finder must determine whether there was one or more occurrence.

20         Plaintiffs' proposed definition of "occurrence" as a "repeated exposure to substantially

21  the same general conditions" is overreaching.  This is a highly specialized definition that the

22  parties do not agree should apply and that does not exist in the policies themselves.  See Kitsap

23  County, 136 Wn.2d at 576 ("If words have both a legal, technical meaning and a plain, ordinary

24

1   meaning, the ordinary meaning will prevail unless it is clear that both parties intended the legal,

2   technical meaning to apply.").  While this may be a common definition used in third-party

3   insurance contracts, it is not the "plain, ordinary, and popular" meaning of the word

4   "occurrence."  Id.  Defendants propose the more reasonable definition, which still permits

5   Plaintiffs to argue and put on evidence that the 2006-2007 winter weather constituted one

6   occurrence under the policies.

7         Defendants argue in passing that the terms should be construed against Plaintiffs because

8   Defendants did not draft the document; it "was prepared on a form previously used and requested

9   by Plaintiffs."  (Dkt. No. 57 at 2 n.4.)  Defendants cite no law that use of a form requested by a

10   plaintiff renders the standard principles of insurance construction inapplicable.  The Court rejects

11   this argument.

12         The Court therefore GRANTS in part and DENIES in part Defendants' motion and

13   DENIES Plaintiffs' motion on this issue.  The Court defines "occurrence" to mean something

14   that takes place or comes about, which is synonymous with an event or incident.

15   C.    Inadequate Record as to the Number of Occurrences

16         There remains a dispute of fact as to whether the 2006-2007 winter included one or more

17   occurrence.  On the one hand, Plaintiffs' have argued that the wind and rain during the 2006-

18   2007 winter constitute one occurrence under the policy.  In their moving papers, Plaintiffs have

19   advanced several (at times competing) theories as to how the 2006-2007 winter is one

20   occurrence.  On the other hand, Defendants present two expert reports that appear to assume that

21   a "weather occurrence" is a meterological disturbance or storm.  For example, one expert states

22   that because there were multiple storms and weather patterns that came through Seattle during

23   the 2006-2007 winter there were multiple occurrences of weather during this time.  (See Dkt. No.

24

1   53-2 at 2.)  This assumes that storms and weather patterns cannot be part of one "occurrence"

2   under the policies.  Yet, the parties dispute this very issue.  Neither party has demonstrated a

3   right to relief as a matter of law.  Moreover, material facts remain in dispute as to whether

4   Plaintiffs' weather claim includes one or more occurrence under the policies.  The Court

5   DENIES summary judgment on this issue.  The parties must present these issues to a fact finder.

6                                              **Conclusion**

7             The Court DENIES Plaintiffs' summary judgment motion and GRANTS in part and

8   DENIES in part Defendants' motion.  Defendants propose the proper definition of "occurrence,"

9   which the Court adopts.  The Court defines "occurrence" to mean something that takes place or

10  comes about, which is synonymous with an event or incident.   Neither party is entitled to

11  judgment as a matter of law that Plaintiffs' claim includes one or more occurrence.  The factual

12  record remains in dispute as to how many "occurrences" constitute Plaintiffs weather claim.  A

13  fact finder must resolve that issue.

14            The clerk is ordered to provide copies of this order to all counsel.

15            Dated this 22nd day of November, 2010.

16

17

18                                              _____
                                                Marsha J. Pechman
19                                              United States District Judge

20

21

22

23

24

ORDER ON CROSS MOTIONS FOR SUMMARY
JUDGMENT- 8