UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WESTERN & CLAY, LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>LANDMARK AMERICAN INSURANCE COMPANY and AXIS SURPLUS INSURANCE COMPANY,<br><br>Defendants. | CASE NO. C09-1423 MJP<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiffs' motion for partial summary judgment (Dkt. No. 64) and Defendants' motion for partial summary judgment (Dkt. No. 66). Having reviewed the motions, the responses (Dkt. Nos. 72, 86), the replies (Dkt. Nos. 81, 90), and all related papers, the Court DENIES in part and GRANTS in part the motions.

**Background**

This case involves a dispute over first-party insurance for a building project that incurred substantial delays due to adverse weather that developed from the fall of 2006 through March, 2007. At issue in the two motions are claimed Sue and Labor costs and Soft Costs.

A.     Sue and Labor

The insurance policies contain essentially identical "Sue and Labor Clauses," which state:

> In case of loss or damage, or imminent loss or damage, it shall be lawful and necessary for the insured, their factors, servants and assigns to sue, labor and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any party thereof, without prejudice to this insurance, to the charges whereof the insurers shall contribute according to the rate and quantity of the sum herein insured; nor shall the acts of the insured or insurers in recovering, saving and preserving the property insured in case of loss or damage be considered a waiver or an acceptance of abandonment.

(McIsaac Decl. Ex. B. at 12.) The policy also includes retentions for each claim for loss or damage: "Each claim for loss or damage shall be adjusted separately and from each adjusted claim, when determined, the following deductions shall be applied against 100% of applicable loss. . . ." (Id. at 5.)

Plaintiffs claim they incurred substantial costs that are properly categorized as Sue and Labor costs and that Defendants have admitted as such. As evidence, Plaintiffs cite to a spreadsheet created by Bill Ballard, the insurance adjuster hired by Defendants to investigate the claims, which contains a proposed, suggested reserve for the Sue and Labor claim. Plaintiffs believe this document constitutes an admission that Defendants owe at least $1.65 million on Plaintiff's Sue and Labor claim. (McIsaac Decl. Ex C at 2.) Neither party includes testimony or a declaration from Ballard as to what he intended to suggest with his spreadsheet.

Plaintiffs provide little other evidence to support their Sue and Labor claim. Kim DeYoung, the onsite manager for the project's construction manager, provided testimony that the builders undertook weather-protection activities that included "on a daily basis, putting up plastic and tents and things of that nature to protect the building." (DeYoung Dep. at 118-119.) DeYoung testified that this was done on an ongoing basis not to protect for any specific approaching storms. (Id.) DeYoung agreed that the "purpose of that temporary weather

protection [was] to protect the property so that work could continue in sequence under the schedule that was in place on the project." (Id. at 117.)

B.  Soft Costs

Defendants seek to limit recovery of soft costs related to two pipe leaks that occurred on September 21, 2007 and October 17, 2007. Defendants admit that 16 condominium units sustained water damage from these pipe leaks and that such damage is covered. They claim to have paid Plaintiffs for costs incurred in repairing physical damage and for general conditions and soft costs for a period that their expert determined would be required to make the repairs. (Dkt. No. 66 at 11.) However, they argue that they do not owe coverage for units that were not damaged by the pipe leaks but which Plaintiffs claim were "affected" by the leaks and for which there are related soft costs. Plaintiffs claim that because of the leaks, work on units that did not necessarily suffer water damage had to be resequenced, which caused increased costs. (Dkt. No. 66 at 12.)

There are several relevant portions of the insurance policies at issue in this dispute over the pipe claims. The policies cover "soft and/or additional costs and expenses, as defined herein, which are incurred by the Insured as a consequence of an indemnifiable claim for damage to the insured project and/or property." (Dkt. No. 67-1 at 43.) "The indemnity under this portion shall be for a period not exceeding such length of time as would be required, with the exercise of due diligence and dispatch, to rebuild, repair, or replace such part of the described property as has been destroyed or damaged." (Id. at 44.) The period is limited to the "12-month period immediately following the date of damage to or destruction of the property described hereunder, or the length of the Project as insured originally, whichever is appropriate." (Id.)

**Analysis**

A.     Sue & Labor Claim

Plaintiffs have failed to produce sufficient factual detail to support a claim that they were wrongfully denied any Sue and Labor costs. Defendants have also failed to show an entitlement to dismiss Plaintiffs' Sue and Labor claim. The Court DENIES relief on both motions.

"Sue and labor provisions of an insurance policy require the assured to take action to prevent or mitigate the damage sustained by the insured vessel." Wolstein v. Yorkshire Ins Co., Ltd., 97 Wn. App. 201, 215 (1999). Two requirements must be met before Sue and Labor costs can be recovered. First, the insured may recover where the acts and expenditures were made "primarily for the benefit of the insurer to reduce or eliminate a covered loss." Id. at 217 (quoting Blasser Bros. v. N. Pan-Am. Line, 628 F.2d 376, 386 (5th Cir. 1980)). Second, the insured may recover for only those imminent losses that are objectively realistic, not merely speculative. See Wash. Mut. Bank v. Commonwealth Ins. Co., 2006 WL 1731318, at *4-5 (Wn. App. June 26, 2006) (unpublished). In addition, the loss and damages must be those covered by the policy itself.

As an initial matter, Plaintiffs attempt to include costs in their Sue and Labor claim that are not properly categorized as Sue and Labor costs. Plaintiffs argued in their opening brief that their claim covered "mitigation efforts undertaken by W&C to prevent imminent loss," such as "keep[ing] the water out and prevent[ing] damage to the buildings." (Dkt. No. 64 at 3, 11.) Plaintiffs distinguished these expenses from "delay and inefficiency costs." (Id. at 3.) However, in their opposition to Defendants' motion for partial summary judgment, Plaintiffs categorize delay and inefficiency costs as Sue and Labor costs. They purportedly "seek[] recovery of costs associated with deferring installation of drywall and other finishes (and attendant delays), and expediting the enclosure of the building (with resulting delay and overhead inefficiencies and

1  expenses)." (Dkt. No. 86 at 11.) Only efforts which relate to protecting the building may

2  reasonably be construed as constituting efforts to prevent damage to the property for the primary

3  benefit of the insurer. Losses related to delay and rescheduling are not Sue and Labor costs, as

4  Plaintiffs seemed to recognize in their motion, but disregarded in their opposition papers.

5        There remains a dispute of fact as to what actions were undertaken primarily to benefit

6  the insurer to reduce or eliminate covered losses due to weather damage. Plaintiffs contend that

7  they undertook efforts to enclose the building and prevent loss and damage to the drywall and

8  electrical systems. (Dkt. No. 86 at 12.) Yet it is unclear whether Plaintiffs undertook these acts

9  for the primary benefit of the insurers. On the one hand, Ms. DeYoung testified that the primary

10  purpose in providing temporary weather protection was to "protect the property so that work

11  could continue in sequence under the schedule that was in place on the project." (DeYoung Dep.

12  at 117.) Defendants argue that this effort was therefore not done for the purpose of protecting

13  the insurer. On the other hand, Plaintiffs argue that that they undertook these measures to stop

14  damage to the building and to the insurer's potential liability for water-related damage. (Dkt.

15  No. 86 at 11-12.) Something that is routinely done in a project can still qualify as an act

16  undertaken primarily to protect the insurer from losses. Given this dispute of material fact, the

17  Court DENIES entry of partial summary judgment on this issue.

18        Plaintiffs argue that Defendants have admitted that Plaintiffs are owed at least $1.65

19  million in Sue and Labor costs. This is not the case. Plaintiffs point to a spreadsheet Bill Ballard

20  drafted, which includes a line item that appears to be a suggestion that Defendants should reserve

21  $1.65 million for Sue and Labor costs. Plaintiffs argue that this shows definitively that

22  Defendants admit Plaintiffs are owed at least $1.65 million in Sue and Labor costs. The

23  spreadsheet is not an admission of liability. The document appears only to be a suggestion as to

24

1 reserves, and there is no evidence as to whether the reserves were approved. Even if they were,
2 Plaintiffs have not demonstrated why a reserve is an admission of liability. Plaintiffs have
3 included no declaration from Ballard as to what he intended. This is not an adequate basis on
4 which to find liability or grant summary judgment. The Court DENIES entry of partial summary
5 judgment on this issue.

6 Plaintiffs also cite to a 30(b)(6) deposition taken of Susan Smith to suggest that
7 Defendants have admitted that work performed by Plaintiffs falls into the Sue and Labor clause.
8 (Dkt. No. 64 at 7.) The facts do not bear this out. The deponent stated only that Landmark
9 considered Plaintiffs' efforts to put visqueen around the building project a failed attempt to keep
10 the weather out of the building. (Dkt. No. 65 at 7.) She did not say it was an act taken to prevent
11 a covered loss to the insured's property. The parties thus continue dispute whether the acts
12 undertaken were done primarily for the purpose of protecting the insurer's interest.

13 The Court DENIES the motions for partial summary judgment on this issue.

14 B. <u>Retention</u>

15 To the extent that any claims for imminent loss are submitted under the Sue & Labor
16 provision, they are not subject to any retention. Plaintiffs' motion on this narrow issue is
17 GRANTED.

18 "Sue and labor provisions of an insurance policy require the assured to take action to
19 prevent or mitigate the damage sustained by the insured vessel." <u>Wolstein</u>, 97 Wn. App. at 215.
20 The <u>Wolstein</u> court explained the purpose of a sue and labor clause is to "'reimburse the insured
21 for those expenditures which are made primarily for ht benefit of the insurer to reduce or
22 eliminate a covered loss.'" <u>Id.</u> at 217 (quoting <u>Blasser Bros. v. N. Pan Am. Line</u>, 628 F.2d 376,
23 386 (5th Cir. 1980). Plaintiffs also cite <u>Am. Home Assurance Co. v. J.F. Shea Co., Inc.</u>, 445 F.
24

1   Supp. 365, 369 (D.D.C. 1978)), in which the court held that "a claim under the sue and labor

2   clause is not a claim for a loss occurrence and the deductible by its own terms is not applicable."

3   (Dkt. No. 64 at 10-11.) The court in Shea held that the sue and labor clause was not subject to a

4   deductible because losses incurred for the benefit of the insurer should be encouraged because

5   they ultimately save the insurer money.

6         It would frustrate the purpose of the Sue and Labor clause to subject such claims to a

7   retention. This would doubly benefit the insurer for actions taken in the insurer's best interest.

8   Moreover, the Sue and Labor clause covers actions taken to prevent imminent loss and damage,

9   which are not specifically covered by the retention clause in the policy. Defendants appear to

10  concede this point. However, in a footnote, Defendants argue that any sue and labor claims

11  arising out of actual, existing loss or damage would fall under the retentions clause because they

12  apply to "each claim for loss or damage." (Dkt. No. 72 at n.2.) It is true that retentions apply to

13  "[e]ach claim for loss or damage," but to apply such a retention to sue and labor costs would

14  frustrate the purpose of the clause. (Dkt. No. 65-1 at 25.) Any valid Sue and Labor claims

15  Plaintiffs pursue are not subject to the policies' retention requirement. The Court thus adopts the

16  rule in Shea and GRANTS Plaintiffs' motion on this limited issue.

17  C.     <u>Soft Costs Limitations as to the Pipe Claims</u>

18        Defendants ask to be excused from paying any soft costs related to condo units that were

19  not directly damaged by water from the pipe leaks in September and October 2007. Defendants'

20  request is impossible to grant on the record they have developed.

21        Defendants' argument contradicts itself. On the one hand, Defendants argue that the

22  Court needs to decide the period of time in which Plaintiffs can claim soft costs damages related

23  to the pipe leaks of 2007. They state: "[w]hile the parties dispute how long the theoretical period

24

[covered by the pipe claim] should be, that issue is not before the Court on this motion." (Dkt. No. 66 at 11.) On the other hand, Defendants argue that "the period of indemnity is limited to the time that would be necessary to rebuild, repair or replace the water damaged units." (Id. at 18-19.) They claim that this period of time is "theoretical," yet, urge the Court to determine how long the theoretical period should be. Defendants' request for relief is thus predicated on the Court determining that the soft costs were incurred outside the time period for recovering soft costs, which is an issue Defendants expressly state is not before the Court. Without a cogent basis on which to decide the issue, the Court DENIES the motion.

Even if the Court were to address the question of the time period applicable to soft cost claims, it could not render a decision. Defendants provide no evidence to support any finding as to the reasonable, actual, or even theoretical time period that might apply to the soft cost claims. Defendants mention for the first time in their reply that their expert has concluded the period should be no more than 34 days. (Dkt. No. 90 at 10.) This argument is improperly raised for the first time in a reply, and the Court cannot validly consider it as a basis on which to grant summary judgment. The Court DENIES the motion on this issue.

Bundled in the motion, Defendants ask the Court to determine what legal framework applies to determining the length of time applicable to soft cost claims. For the sake of clarifying the legal framework of this dispute, the Court renders a decision and GRANTS Defendants' motion on this narrow issue.

Under the policy, recovery of soft costs is limited to a period of time that it takes, with due diligence and dispatch, to repair, rebuild or replace the units that were damaged by the pipe leaks. The policies themselves support this conclusion. The policies state that "indemnity under this portion shall be for a period not exceeding such length of time as would be required, with the

1    exercise of due diligence and dispatch, to rebuild, repair, or replace such part of the described

2    property as has been destroyed or damaged." (Dkt. No. 67-1 at 44.)  Soft costs are limited to a

3    specific set of costs "which are incurred by the Insured as a consequence of an indemnifiable

4    claim for damage to the insured project and/or property." (Id. at 43.)  Here, the indemnifiable

5    claim for damage is the pipe leak that damaged 16 condo units.  Soft costs are limited to the time

6    theoretical time it would take, with reasonable diligence and dispatch, to repair, replace, or

7    rebuild those 16 units—not the amount of time it took to "resequence" building the "affected,"

8    but undamaged units.  See SR Int'l Bus. Co., Ltd. v. World Trade Center Props. LLC, No. 01

9    Civ.9291(MBM), 2005 WL 827074, at *7 (S.D.N.Y Feb. 15, 2005).  On this narrow issue the

10   Court GRANTS Defendants' motion.  A finder of fact must determine how long it should take

11   rebuild and replace the damaged units.

12           In their opposition, Plaintiffs argue that Defendants are trying to skirt around the

13   "efficient proximate cause" rule.  This rule is not applicable.  The rule states that "[i[f the initial

14   event, the 'efficient proximate cause,' is a covered peril, then there is coverage under the policy

15   regardless whether subsequent events within the chain, which may be causes-in-fact of the loss,

16   are excluded by the policy." Safeco Ins. Co. of Am. v. Hirschmann, 112 Wn.2d 621, 628 (1989).

17   The rule thus requires there to be more than one disputed cause of the loss.  This theory is

18   inapplicable in this case because Defendants admit that the only cause for the requested soft

19   costs is the pipe leaks.  They do not claim that the soft costs are not recoverable because they

20   were cause by a second non-covered peril.  Rather, they argue that because they occurred too late

21   after the leaks, they cannot be recovered.  The Court rejects Plaintiffs' argument.

22   \\

23   \\

24

## Conclusion

Plaintiffs have failed to produce sufficient undisputed facts that entitle them to a finding of liability on their Sue and Labor claim. Plaintiffs have, however, persuasively argued that any claims they make under the Sue and Labor clause are not be subjected to a retention. The court DENIES in part and GRANTS in part Plaintiffs' motion for partial summary judgment.

The Court DENIES Defendants' motion for partial summary judgment as to Plaintiffs' Sue and Labor claim, given the presence of genuine issues of material fact. Defendants have shown, however, that delay costs cannot be claimed as Sue and Labor costs. The Court GRANTS their motion on this limited issue. Defendants' motion with regard the pipe claim is DENIED in part. Several genuine disputes of material fact bar entry of summary judgment in Defendants' favor. The Court does, however, adopt the legal framework Defendants present as to how to determine the length of time applicable to soft cost claims. The Court GRANTS in part the motion on this narrow issue.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 28th day of January, 2011.

Marsha J. Pechman
United States District Judge